IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSE I. MUNOZ,

    Appellant,

vs.                                                                                                                No. CR 01-1186 LH

UNITED STATES OF AMERICA,

    Appellee.

**MEMORANDUM OPINION AND ORDER**

    **THIS MATTER** comes before the Court on appeal from the judgment of the United States Magistrate, which was based on the jury's unanimous conviction on one of three counts charged. The Court, having considered the briefs submitted by the parties, the factual record, and otherwise being fully advised, finds that the Magistrate's judgment should be **affirmed.**

    Appellant was charged with three counts of violating 18 U.S.C. §111(a)(1), assaulting or interfering with a federal officer while engaged in the performance of his or her official duties, stemming from an altercation with a United States Border Patrol officer. Magistrate Judge Leslie C. Smith presided over a jury trial on January 28-30, 2002.

    At trial, the following witnesses testified for the Government: Watch Commander Jaime Perez, Supervisory Agent Eugene Lewis, Agent Ismael Lopez, Supervisor Carlos Roches, and Agent Mary Edmison of the United States Border Patrol ("USBP"); Border Patrol Explorer Scouts Manuel

Martinez, Jr., Dusty Read, Jessica Torres, and Joshua Lewis; treating physician Dr. David Kunz; and emergency medical technician Christopher Quarrell. Juan A. Ortiz testified on behalf of Appellant.[1]

The jury returned a verdict of not guilty on Counts I and II and guilty on Count III. Judgment was entered on July 1, 2002, and Appellant filed a timely notice of appeal, arguing that the evidence was insufficient to support the jury's guilty verdict on Count III.

**I.   BACKGROUND**

The facts, taken in the light most favorable to the verdict, are as follows. On the evening of June 12, 2001, United States Border Patrol Agent Ismael Lopez drove onto Appellant's land in a marked Border Patrol vehicle in order to return some paperwork to a gentleman named Alejandro Ramos, who lived in a trailer on Appellant's land. Agent Lopez was dressed in plain clothes, except for a Border Patrol Explorer Scouts baseball cap and a gun belt issued by the United States Border Patrol. His firearm, two clips of ammunition, handcuffs, radio, and expandable steel baton were attached to the gun belt. Agent Lopez's regular shift had ended earlier that day, but he conducted an Explorer Scouts ("Scouts") meeting that evening, and the four teenaged Scouts, Manuel Martinez, Jr., Joshua Lewis, Jessica Torres, and Dusty Read accompanied Lopez in the vehicle when he attempted to deliver the paperwork. Agent Lopez planned to take the Scouts to get ice cream after delivering the paperwork.

There were two trailers placed side-by-side on the land. Agent Lopez parked near the open gate and told the Scouts to stay in the vehicle while he returned the papers. Lewis, Torres, and Read did stay in the vehicle during the events that followed, but Manual Martinez, Jr. got out of the car

---

[1] Defense witness, Lucillo Caballero, was sworn in, but was withdrawn before he testified.

some time during the events that transpired. Agent Lopez knocked on the door of the trailer on the right-hand side where he had been instructed to deliver the paperwork. Finding no one home, Lopez started to return to the Border Patrol vehicle. At that time, Appellant and his wife walked out from around the rear of the second trailer, on the left-hand side, and the parties exchanged words about the paperwork and Lopez's presence on Appellant's property.

Appellant asked Lopez to leave the property. Appellant was agitated, used profanity, and said, in Spanish, that he was going to get a gun and shoot Agent Lopez. Appellant and his wife then began walking toward the door of the second trailer, which was around the far side. Agent Lopez followed them, and he advised Appellant that he had threatened a federal officer, which was a crime. He asked Appellant to stay where he was while Lopez called a supervisor to come out to the property. Appellant kept moving toward the door of the trailer.

Lopez tried to place himself between Appellant and the door of the trailer in order to prevent him from gaining access to the trailer. He stated he was concerned that Appellant had a gun in the trailer and would try to shoot him. In response to being blocked, Appellant pushed Lopez, and he pushed Appellant back "to create a distance." Lopez also extended his collapsible steel baton at that time, but maintains that he never hit Appellant with it.

Appellant's aggression caused Agent Lopez to be concerned for his safety, and he told Appellant to get down on the ground. Then, Appellant "rushed" Agent Lopez again, heading in the direction of the trailer, and pushed Agent Lopez again. Lopez tried to push Appellant back again, but Appellant grabbed him and they both went down to the ground. Appellant hit his head on the ground and was stunned. While they were both on the ground, Lopez turned Appellant over, facing

the ground, handcuffed him, and placed him under arrest. Appellant's wife, Ms. Munoz, witnessed the entire altercation.

A USBP supervisor and emergency medical team were called, and the altercation was over. Agent Lopez, as well as others, heard Appellant's wife tell Appellant that he had threatened, pushed, and assaulted Lopez. Appellant received some cuts and bruising to his head, and Agent Lopez received some cuts and swelling on his knee.

## II.   STANDARD OF REVIEW

The District Court reviews criminal judgments entered by Magistrates, and "[t]he scope of appeal is the same as an appeal to the Court of Appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(B) and (D) (2003). In reviewing the sufficiency of the evidence, the Court reviews the record *de novo* and determines "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Holder*, 256 F.3d 959, 966 (10th Cir. 2001) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The evidence must be reviewed in the light most favorable to the verdict, *United States v. Almaraz*, 306 F.3d 1031, 1040 (10th Cir. 2002), but the reviewing Court does not weigh the evidence or determine the credibility of witnesses. *Kelly v. Roberts*, 998 F.2d 802, 808 (10th Cir. 1993). Evidence is "substantial" enough to support a jury's guilty verdict if it does more than raise "a mere suspicion of guilt." *Id*.

## III.   DISCUSSION

A person violates §111(a)(1) when he "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any [officer or employee of the United States or of any agency in any

branch of the United States Government]...while engaged in or on account of the performance of official duties." 18 U.S.C. §111(a)(1). Count III of the Second Amended Information alleged that Appellant violated §111(a)(1) "by refusing Agent Lopez's orders for him to remain where he was and to get on the ground and by pushing and grabbing Agent Lopez." In its instructions to the jury, the Court stated:

> For you to find the Appellant guilty of this crime, you must be convinced that the Government has proved each of the following beyond a reasonable doubt:
>
> First: That the Appellant forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with Agent Ismael Lopez;
>
> Second: That Agent Lopez was a federal officer as described below, who was then engaged in the performance of his official duty as charged; and
>
> Third: That the Appellant did such acts intentionally.
>
> The term "forcibly assault" means any intentional attempt or threat to inflict injury upon someone else, when coupled with the apparent present ability to do so, and includes any intentional display of force that would give a reasonable person cause to expect immediate bodily harm, whether or not the threat or attempt is actually carried out or the victim is injured.
>
> ...
>
> The test of whether the agent was engaged in the performance of his official duty is not whether he was "on" or "off" duty, but whether he was acting within the scope of what he is employed to do or is engaging in a personal frolic.

(Court's Instructions to Jury (Docket No. 49), filed January 30, 2002, Instruction No. 8).

### A. Assaults, Resists, Opposes, Impedes, Intimidates, or Interferes

The evidence presented to the jury was sufficient to find that Appellant had assaulted, resisted, opposed, impeded, intimidated or interfered with Agent Lopez. Agent Lopez and others testified that Appellant had initially shouted profanities and acted irrationally (T. at 73, lns. 1-2, 11-14; 74, lns. 6-7,

13; 18-25; 76, lns. 5-6 (Lopez)), and that Appellant threatened to shoot him. (T. at 153, lns.1-9, 178, lns. 7-9 (Martinez)). Lopez stated that he told Appellant to stop moving toward the trailer while he called a USBP supervisor, but Appellant did not stop. (T. at 81, lns. 9-14). Finally, Lopez testified that Appellant actually pushed him, (T. at 81, lns. 13-14, 22-23) two or three times when he tried to block Appellant's way to the trailer door, and "rushed" at him once, heading in the direction of the trailer (T. at 84, lns. 4-11). Lopez pushed Appellant back to create a distance, and stated that he was concerned for his safety at the time. (T. at 82, lns. 10-11). On Lopez's second push, Appellant grabbed Lopez and pulled him to the ground. (T. at 81, lns. 11-14, 22-23; 82, ln. 1; 84, lns. 3-18, 10-15), after which Agent Lopez handcuffed and arrested Appellant.

Additionally, witnesses, including Agent Lopez, heard Ms. Munoz tell Appellant, in response to his question about what had happened, that Appellant had threatened, pushed, and assaulted Agent Lopez (T. at 89, lns. 19-25; 90, ln. 1 (Lopez); T. at 164. lns. 12-20 (Martinez); 346, lns. 8-10 (Roches) T. at 329, lns. 1-5 (Quarrell)).

Not all resistance to federal officers rises to the level of a violation of §111. *See, e.g.*, *United States v. Cunningham*, 509 F.2d 961, 963 (D.C. Cir. 1975)(commenting that not all failures to cooperate with federal agents are within the statute's prohibition and some measure of "presently applied force" is required). However, in a 1997 case, conduct similar to Appellant's rose to the level of a violation of §111(a)(1). *United States v. Segien*, 114 F.3d 1014, 1016-17 (10th Cir. 1997)(affirming conviction of Appellant who refused to submit to restraints, grabbed a federal corrections officer's genitals, spit on him, and said "I'll kill you.").

The Government provided the jury with sufficient evidence that Appellant used "presently applied force" in this case, including the use of profanity, a threat to shoot Agent Lopez, two or three

pushes or shoves, and pulling Lopez down to the ground in a scuffle.  Additionally, Appellant ignored the orders of Agent Lopez to stay where he was.  Based on this evidence, a rational jury could have found that Appellant assaulted, resisted, opposed, impeded, intimidated or interfered with Agent Lopez, and that a reasonable person would expect immediate bodily harm from such conduct.[2]

### B. Engaged in the Performance of his Official Duties

Appellant urges that the evidence was not sufficient for the jury to find beyond a reasonable doubt that Agent Lopez was engaged in the performance of his official duties as a Border Patrol agent when he went to Appellant's property to deliver the papers belonging to Alejandro Ramos.  Agent Lopez's working shift was over for the day, and he was with the teenaged Explorer Scouts.  Agent Lopez was wearing plain clothes, and the Scouts were in the vehicle with Lopez on the way to get ice cream after a meeting.

The Tenth Circuit has interpreted the "while engaged" element of §111(a)(1) quite broadly, refusing "to cage 'official duties' either with a rigid time line or highly circumscribed activity." *United States v. Holder*, 256 F.3d 959, 964 (10th Cir. 2001).  In *Holder*, the Court of Appeals held that "'while engaged' realistically embraces the sequences of steps involved in any task 'on account of' the official's performance of his duties." *Id*. at 967.  Moreover, "[w]hile time and place may be dispositive in one case, in others, the mission may override in the court's analysis." *Id*. at 963.

---

[2]Appellant argues that, because the jury did not convict him on Counts I and II, it must have disbelieved that Lopez feared for his safety.  Therefore, he argues, the Court should not take Appellant's threat to shoot Lopez into consideration.  The Court will not compartmentalize the evidence in that fashion, since all of the evidence was available to the jury in making its decisions.  For instance, the jury could have found Appellant not guilty on Count II because it did not believe that, at the time of the threat to shoot Agent Lopez, Agent Lopez actually feared he would be shot.  At the time of the scuffle behind the trailer, however, Appellant was very close to the door of the trailer, and the jury could have considered the earlier threat to shoot Lopez as a factor in evaluating whether to believe Lopez feared for his safety later.

Determination of whether the federal official was engaged in the performance of his duties is the task of the jury. *Holder*, 256 F.3d at 966 ("Here for conviction, *the jury* had to decide the ultimate issues of fact: whether [the victim] was present on the BC Wetlands 'engaged in or on account of' his 'official duties'...when [the defendant] interfered with that task....")(emphasis added).

Agent Lewis testified about the activities and duties of Border Patrol agents, including the activities engaged in while working with the Scouts. (T. at 22, ln. 25; 23, lns. 1-25; 24, lns. 1-4 (Lewis)). The supervisors and Agent Lopez testified that Lopez was considered to be on duty and was paid when he met with the Scouts, (T. at 39, ln. 13; 42, lns. 2-6 (Lewis); T. at 104, lns. 24-25; 105, lns. 1-5, 10-22 (Lopez)), and that Lopez was on official business the evening of June 12, 2001. (T. at 47, ln. 22 (Lewis)).

Moreover, the jury heard the testimony that Agent Lopez had been ordered by his supervisor to return the paperwork as soon as possible (T. at 21, lns. 23-25; 38, lns. 19-24 (Lewis). Agent Lopez testified that he understood that he was supposed to return the paperwork "that day." (T. at 101, ln. 13), but that he was unable to do so during his regular shift. (T. at 101, lns. 14-17). Thus, even if the jury found Lopez's work with the Scouts to be beyond the ambit of "official duties," a rational trier of fact still could have found that Agent Lopez was engaged in the performance of his official duties by virtue of returning the papers. It would be of no consequence that he had the Scouts with him, however ill-advised it later turned out to be.[3]

---

[3] Appellant additionally urges that, even if Agent Lopez was performing his official duties as a federal officer when he *started* to deliver the paperwork, he was no longer performing his official duties when he discovered that Alejandro Ramos was not home and Appellant asked him to leave.

In *United States v. Murdock*, 826 F.2d 771 (8th Cir. 1987), the only case cited by Defendant that is relevant to this discussion, the Eighth Circuit held that evidence that the government official was on the Appellant's private land at the time of the incident was relevant to show that the officer

**C. Force**

Appellant urges that the evidence was insufficient for the jury to find beyond a reasonable doubt that Appellant's conduct, as alleged in Count III, was intentional or forceful. Appellant claims that, at most, the evidence showed that Appellant "sought to make his way past Lopez," and "[a]s a result, Lopez pushed, wrestled or threw Mr. Munoz and as he was falling [Munoz] may have grabbed Lopez to prevent his fall." Appellant's Brief-in-Chief, at *15.

"Force" is the intent to inflict injury coupled with the apparent present ability to do so. The jury heard evidence that Appellant used profanity, threatened to shoot Lopez, and attempted to and did push or shove Agent Lopez, inflicting injury. Based on this evidence, a rational juror could find that Appellant intended to and possessed the apparent ability to inflict injury on Agent Lopez.

**D. Specific Intent**

Finally, Appellant argues that 18 U.S.C. §111(a)(1) is a "specific intent" crime, requiring the jury to find that Appellant had the intent to commit the crime, not just that he committed the act that the statute makes criminal. Appellant claims that the evidence was insufficient to show that Appellant acted with "specific intent." In a pretrial memorandum opinion and order (Docket No. 36), however, Magistrate Judge Smith ruled that §111(a)(1) is a general intent crime. According to Judge Smith's ruling, specific intent need not be proven under §111(a)(1). Appellant's first argument, therefore,

---

was not acting within the scope of her duties. The Court refused, however, to instruct the jury with a legal conclusion that the officer was trespassing. *Id.* at 774-75. *Murdock* clearly, and correctly, left the determination of whether the officer was acting within the scope of his or her duties to the jury without making a legal ruling about trespass that could have confused them about their charge. *Id.* at 774 ("If the jury had decided that [the officer] made an unprivileged entry onto Murdock's land, it *could have found* that she was not performing her duties and was thus outside the protection of the statute.")(emphasis added).

must be that Judge Smith erred in his ruling that §111(a)(1) is a general intent crime before he can challenge the sufficiency of the evidence presented.

The Tenth Circuit ruled in *United States v. Hill* that section 111 is not a specific intent crime. 526 F.2d 1019, 1027 (10th Cir. 1975) (citing *United States v. Feola*, 420 U.S. 671 (1975); *Pino v. United States*, 370 F.2d 247 (D.C. Cir. 1966)). Appellant argues that the Tenth Circuit overruled *Hill* in *United States v. Simmonds* and declared §111 to be a specific intent crime. 931 F.2d 685, 687 (10th Cir. 1991); *see also United States v. Kimes*, 246 F.3d 800, 808 (6th Cir. 2001)(examining different circuits' rulings on the general or specific intent question for 18 U.S.C. §111(a)(1) and placing the Tenth Circuit in the specific intent category, through its ruling in *Simmonds*).

The Court cannot abide Appellant's suggestion that the Tenth Circuit overruled its interpretation of §111(a)(1) to create a specific intent crime. The *Simmonds* Court engaged in no analysis whatsoever of whether §111(a)(1) is a specific or general intent crime. The *Simmonds* opinion contains a mere reference to the lower court's instructions to the jury. 931 F.2d at 687. This is simply insufficient for the Court to conclude that the Tenth Circuit has overruled its holding in *Hill* that §111 is a general intent crime. Therefore, the trial court's holding that §111 is a general intent crime is affirmed, and this Court need not review whether the evidence of specific intent was sufficient.

**IV.     CONCLUSION**

The Court finds that the jury was presented with sufficient evidence with which to find beyond a reasonable doubt each element of §111(a)(1) on Count III.

**IT IS, THEREFORE, ORDERED** that the judgment of the Magistrate is affirmed.

_____
**UNITED STATES DISTRICT JUDGE**